I'd like to reserve five minutes for rebuttal. My name is Jason Litt and may it please the court, my name is Jason Litt and I represent the appellant, TIG Insurance Company. This TCAM lawsuit asserts a public right to challenge a fraudulent workers' compensation insurance claim. In this case, Mr. Culpepper made representations that he had difficulty lifting his arms above his head, walking a couple blocks, even getting out of bed in the morning, when all the while he was sparring with professional mixed martial arts fighters, running long distance races, and making a tape to audition for Survivor where he was touting his physical prowess. The district court dismissed this case on procedural grounds under a labor code provision, section 5901, which the district court found imposes an exhaustion requirement before this lawsuit could be brought. The district court misinterpreted that statute. It simply makes no sense to impose an exhaustion requirement where the panel that would be reviewing would have absolutely no impact whatsoever on whether the claim could go forward. The legislature specifically intended that these TCAM lawsuits be brought in civil courts, and specifically laid out the basis for such claims, which can be based solely on the attempt to make any kind of fraud, solely on making any misrepresentations in pursuit of insurance benefits. Your position would be that if you had succeeded before the WCAB, you could still bring the We cite, sort of in the briefing, Mr. Culpepper kind of shifts the argument from an exhaustion argument to sort of a workers' compensation exclusivity argument. But we cite two California Court of Appeal cases that make very clear that the exclusivity provisions of the labor code simply do not apply in these TCAM actions, which were specifically designed by the legislature And your TCAM action would not in any way revoke the WCAB order, correct? Exactly, Your Honor. It would have no impact whatsoever on the WCAB order. I understand. It looks like the Alza Yacht case was decided after the district court issued its decision in the present case? Yes, Your Honor. And the district court, therefore, didn't have the benefit of that decision when it issued its order. I'm kind of curious, and whether you know why the district court did not address Monterey Mushrooms versus Thompson. Was that discussed? It was cited in the briefs below, Your Honor, and I don't know why the district court didn't address that in his order. And so is there any reason why the holding in that case that the IFPA claims are not barred by the WCA's exclusivity rule does not conclusively resolve the issue here? Are you saying what the Thompson court said conclusively resolves it? Yes. Is there a reason why a holding in that case? I think it did. I think where the confusion arose, Your Honor, is that the district court was looking at this solely based on Section 5901, which is really at the end of the process for when you're allowed to challenge an order in a petition for re-review. He was citing at the beginning, sort of as background, the exclusivity rules, but he wasn't really deciding it on that issue. So I think if he had really dug into that issue, I think he would have realized that this claim just doesn't belong in the workers' compensation court at all. And Section 5901 really just has nothing to do with this kind of claim. Because it's intended to be brought in civil courts. And even if you look at the language of Section 5901 on its own, it clearly doesn't apply. It says it prohibits the accrual of a cause of action that arises out of a final workers' compensation order. And this action doesn't arise out of a final workers' compensation order. It arises out of Mr. Culpepper's dishonesty in seeking his workers' compensation benefits. Moreover, the claim accrued well before the order ever existed. And as Your Honor pointed out, we could have brought this claim, or TIG could have brought this claim, even if they had discovered the fraud earlier and we never got to a settlement. They could have brought a key TAM action right then and in a civil court without any input from the WCAB. And if there are any questions right now, I think I'll just wait for rebuttal and address it then. Thank you. Good morning, Your Honor. Stephen Mitchell for, may it please the Court, Stephen Mitchell for Defendant Brad Culpepper. Mr. Culpepper played nine years in the NFL and suffered debilitating injuries. He filed a workers' compensation claim where the issues of injury were litigated by TAG. They hired lawyers. They were able to investigate his claim. They entered into a settlement. The settlement was approved by the judge. In this case, as Judge Carney would point out, the key TAM case would undermine the workers' compensation system if TIG were allowed to file a key TAM action that sought to overturn and set aside and be inconsistent with. Mr. Mitchell. Yes, Your Honor. Would any of the payments under the settlement be, would they have to be paid back? Payments under the settlement, no, Your Honor. However, under the Alziot case, which I believe that's the way to pronounce it, and we brought this up in our 28J letter, the court made it very clear that the reason why the key TAM action was applicable was because Mr. Alziot was not seeking any individual damages. He wasn't seeking payments to be refunded. He wasn't seeking anything other than the civil penalties. Here, however, we have TIG specifically requesting this court to, or the district court, excuse me, to refund or pay, excuse me, have Mr. Culpepper pay TIG's attorney fees in the workers' compensation action. Under the Harris case, Hughes case, excuse me, cited in our brief, the allocation of attorney fees are under the exclusive jurisdiction of the workers' compensation appeals court. The order in this case was silent in the underlying workers' comp case, was silent as to attorney fees. Under the American rule, each side bears its own attorney fees, where the agreement, judgment, or contract is silent as to attorney fees. They are now asking the district court to reallocate attorney fees, which is under the exclusive jurisdiction of the workers' compensation appeals court. How do you reconcile Monterey Mushroom versus Thompson? Very easily, Your Honor. I think Monterey Mushroom is not on point. We talk. They seem precisely on point. It seems like that, and Alziot, I know you just referred to it. It seems like those cases held at the IFPA, but I want to hear your response. It seems like they held that the IFPA falls outside the exclusive jurisdiction of the workers' compensation appeals board. And I'm just, I haven't, in your briefing I didn't see any real articulation or distinction between those cases and the present case, and I'm just trying to figure out what the basis, if any, to conclude that an IFPA claim seems to clearly fall outside the board's jurisdiction, is subject, why would it be subject to the California Labor Code, Section 5901? So if you could help me understand that, I'd appreciate it. One, Your Honor, Monterey Mushroom specifically says the workers' compensation board did not have before it the broad pattern of conduct that is alleged here. Because the TIG didn't know about the broad pattern of conduct which they were alleging in their quitam action. Your Honor, the broad, quote, pattern of conduct Monterey Mushroom was referring to was a concerted scheme by chiropractors to submit hundreds of workers' compensation claims. They had workers' compensation claim over here that might have had two chiropractic bills. We have a couple here and a couple here, so the workers' compensation board isn't going to see that scheme. The quitam action allows them to see the broad scheme. Here, in essence, you can't see the forest for the trees. Here, we only have one tree. We have Brad Culpepper and TIG who litigated a case. They're claiming fraud in that case. Their burden of proof in the fraud case, the quitam case, would require them to show that Mr. Culpepper was not disabled. Because under the Wilson case, they have to show a causal connection between the false statement and the claim itself. They would have to prove he wasn't disabled. They prove he didn't lose wages, prove that his false statements were causally connected to his false claim. That is exactly what Vacante requires the court in doing an exclusivity analysis. In this case, it seems that Mr. Culpepper was not, was out doing things contrary to the disability decision. Your Honor, that's certainly something that we vigorously deny. What we don't have before the court is what Mr. Culpepper did with his $175,000. One of the reasons why the judgment sought by TAG would undermine the workers' compensation system is it would deter a claimant who gets a settlement, and let's say he has a bad back. I want to take that money and fix my back so I can go play golf or something. This type of action by them where they can say, well, now you can play golf, Mr. Mitchell, after I went and used that money to fix my back. But it seems like some of these incidents that were highlighted were before he got his money, unless I misunderstood that. Well, that's a duty to disclose. That's a different issue. That's a deceit that did we have a duty to disclose during the workers' compensation case. Again, that falls specifically under the workers' compensation system. On Alziot, in addition to Monterey Mushroom, one more point there, neither the state nor Monterey Mushroom or Thompson was a party to any claim or any order of the Workers' Compensation Appeals Board. Here, we have an order that was fully litigated by the parties here, too. If we're going to allow an insurance company to cherry-pick subjective statements made during the course of a workers' compensation case and say that is now fraudulent, we're going to completely undermine the workers' compensation system. So in your view, what is the purpose of the IFPA? The purpose of the IFPA is to combat workers' compensation fraud, 100%. I agree with that statement that was made in T.E.G.'s point. Our position is that 5901 requires that determination of fraud to be made in the workers' compensation case, and that's what Baconte requires. Well, it seemed like in your briefing you were saying that it didn't rise out of the work. Is that what you're still arguing? I'm sorry. I don't understand. That the present action needs to arise out of the Workers' Compensation Board when the allegedly fraudulent statements were made. How can the present action arise out of the order of the Workers' Compensation Board when the allegedly fraudulent statements were made before the board issued its order? The fraudulent statements were made during the course of the workers' compensation case, Your Honor. I think that's what you were talking about. Right. Okay. They were made as part of the claim, the workers' compensation claim. You can't say, take one cherry-picked statement that under the penal code is a false statement. They have to prove under Wilson that the entire claim was false. I think the reading of 5901 that TIG offers is inaccurate. They focus on the term accrual. However, the language of 5901 is very, very clear. No cause of action shall arise in any court to any person arising out of any order. Shall accrue in any court to any person arising out of an order of the WCAB. To me, here, TIG is seeking to make determinations of fact as to Mr. Culpepper's fraud during the workers' compensation case. And although it wouldn't specifically address the damages, the underlying issues of disability, was Mr. Culpepper disabled? He said, I can't crouch. Well, now he can crouch because he's done certain things to make himself better. Let's not forget, he was nine years in the NFL. This is a superior athlete. They are trying to take these things he's done out of context. The workers' compensation board is much better equipped to decide issues of disability, and whether or not he was, in fact, injured. I think the Viconte case requires a case-by-case analysis, and that's why Monterey Mushroom and Alziot, in general, are not on point. We need to look at the claim, because Alziot was a claim of employee versus an employer. Here we have an employer's insurance company filing a case against an employee for allegedly false statements made during the course of the workers' compensation case. That is where the Viconte analysis comes in. Does Mr. Culpepper's injuries arise out of that? Absolutely. Does Mr. Culpepper's allegedly fraudulent acts satisfy the second prong of Viconte? Yes, they do. Under that analysis, and the facts of this case, Mr. Culpepper's fraud, or alleged fraud, which, again, we certainly deny, is subject to determination by the workers' compensation appeals board and not a civil jury. A civil jury is going to see things taken out of context by TIG. Again, we'll be able to do that, but Mr. Culpepper shouldn't be required to relitigate issues already litigated in the workers' compensation case. This type of action would undermine the workers' compensation system by allowing insurance companies to hold over a head of claimants. Hey, if you made any misstatement in any of these little forms you filled out, we can come after you in the future, five years down the line. And it seems that there might be some confusion as to whether the QTAM action creates concurrent jurisdiction over this type of claim. I would contend that workers' compensation issues, such as here, if the Viconte case is applicable and this is exclusive, there is no concurrent jurisdiction. This is exclusively an issue that should be decided in front of the workers' compensation appeals board. Thank you very much. Thank you, Your Honor. Mr. Litt, would you please address the point that was made by Mr. Mitchell as to the Viconte case? Yes, Your Honor. First of all, the Monterey Mushroom case addresses Viconte specifically and points out that it doesn't apply because these claims, the legislature made clear, were meant to be brought in the civil court. And I think if you look at Viconte, it comes out with a multi-part test of how you establish workers' compensation exclusivity, and in that case they had to weed through a lot of claims to determine which kinds were and which kinds weren't. But I think if you get to the end of that test, the one exception to workers' compensation exclusivity is for where the motive behind these acts does not violate a fundamental policy of the state. And that's where Viconte just doesn't apply. Where the legislature has created a specific claim designed to go forth in the civil courts,  And I would like to point out that these weren't minor misrepresentations here. Indeed, we cite in our complaint, Mr. Culpepper acknowledged in deposition in this case that he said he was never disabled. And that's evidenced by the fact that he's running half marathons and kickboxing and got a black belt. And this is exactly the kind of case that the IFPA was proposing. What was preventing you from discovering that and litigating that in the WCAB proceeding? Well, Your Honor, I think that's an important point. The whole purpose of the workers' compensation system is not to have to do those kinds of independent investigations. You don't have to do an investigation as to negligence, but you do have to do an investigation as to causation and damages. But, Your Honor, in order for that to have been accomplished by the workers, by CIG or the qualified medical examiners, they would have had to go out and follow Mr. Culpepper around. Because he told, I mean, Mr. Culpepper's counsel is correct. Why couldn't you do surveillance and take movies? But, Your Honor, if there was surveillance in every workers' compensation case, people's workers' compensation premiums would go through the roof. I mean, the whole, you have to, I mean, you can't assume every person. They go through the roof because of fraudulent claims that have been paid. That's the other argument. I mean, I'm still, I can't understand why you weren't able to litigate his disability in the workers' compensation case. Say, he's not disabled because he can do all these things. But they didn't know that he could do all those things because he told them. But whose fault is that? Well, it's his fault, Your Honor. He told the qualified medical examiners a whole list of things he couldn't do. They asked him a bunch of questions. If you had your qualified medical examiners, you could examine him. And if his physical condition was not consistent with his claims, you could certainly do surveillance. So why didn't you do it? But, Your Honor, he's claiming, we're not contesting that he necessarily didn't have any injuries. I think Mr. Culpepper's argument seems to be if you have any kind of injury at all, you can walk into the workers' compensation system. You can exaggerate, tell the qualified medical examiners, I can't do this. I can't get out of bed. I can't walk down the street. I can't pick up my groceries. And, you know, if the qualified medical examiners have to believe that unless they're going to go out and follow him around. Why can't you go out and follow him around if you've got reason to believe that he's a phony? Well, I'm assuming they didn't have reason to believe he was a phony at that time. Whose fault was that? Well, again, Your Honor, it's his fault for making the fraudulent statements. And put in context, this is exactly why the IFPA was passed, to give a remedy for this exact kind of situation. So when Mr. Culpepper tries to distinguish the Monterey Mushroom case, well, that case involved a group of medical providers. This is the classic case. This is what that was specifically meant to prevent. But Monterey Mushroom did not involve a WCAB claim, right? Well, it involved medical providers who were suing insurers based on not getting paid, I think, for their medical claims. Yeah, but it didn't involve the determination by the WCAB that any of these people were disabled. They weren't trying to go around that and find that he wasn't disabled. Well, in this case, Your Honor, the WCA didn't really make any determination. It just proved the settlement. There was no litigation whatsoever about whether or not he was actually disabled or not. But the point is that the IFPA, key TAN actions are set up for an important purpose. The government doesn't have the resources to investigate all cases of insurance fraud. So when these kind of cases are discovered, they need to be brought. My question to you is, why wasn't it discovered in the WCAB proceeding? And you're saying, because he lied to us. But why did the insurer say, we're not going to accept your lies. We're going to do some investigation. And the only answer I can give you, Your Honor, is there are thousands, hundreds of thousands of workers' complication claims that come through the system every year. And the reason you have these laws is to deter exactly what happened here and not to require the workers' compensation system to have to go out and do their own independent investigations on every single claim by following everybody around to ensure that what they're telling them is honest. Thank you. And if there are no other questions, I'll submit. And that brings us to the end of our calendar. We stand in recess until tomorrow morning at 9 o'clock. Thank you, gentlemen. All rise. Hear ye, hear ye, all persons having a business with the audible of the United States Court of Appeals for the Ninth Circuit, will now refer to this court for this session and adjourn.
judges: Bea, Murguia, Keeley